DAVIS, Judge.
S.S.challenges the final order of the Department of Children and Family Services (the Department) denying her request to amend or expunge its report that S.S., while acting as a caregiver for her mother, M.S., abused, neglected, or exploited M.S. Because the relationship between S.S. and M.S. did not meet the statutory definition of caregiver, we reverse.
The facts of this case are somewhat bizarre. In mid-March 1999, M.S. fell while getting out of S.S.’s car in the garage of the home the two shared. S.S. was unable to lift her mother off of the garage floor. However, because M.S. distrusted medical professionals due to the circumstances surrounding her husband’s death, she refused to allow her daughter to call for help. Instead, S.S. brought her mother blankets, food, and beverages.
On March 25, 1999, after her mother had been on the garage floor for at least two days, S.S. contacted her own doctor’s office, explained the situation, and requested that her doctor come to the house to see M.S. The doctor’s assistant informed S.S.that the doctor did not make home visits. Although the assistant offered to call emergency medical services (EMS), S.S.refused the offer and said that she would call herself when she returned home. Five days later, on March 30, 1999, S.S.telephoned EMS.
Emergency medical personnel responding to the call found M.S. alert and oriented, not suffering from any pain or broken bones, but covered in feces and urine. M.S. was transported to the hospital, *880 where emergency room staff discovered decubitus ulcers on her lower back that were so severe that the coccyx bone was visible and internal organs were affected. She also was malnourished, dehydrated, and suffering from preexisting medical conditions requiring immediate emergency treatment. Over her doctor’s advice, M.S. refused to have a feeding tube inserted. On April 13, 1999, M.S. was discharged to a nursing facility, where she died two days later.
On May 19, 1999, the Department filed a report finding that S.S. had neglected her responsibility as her mother’s caregiver. S.S. challenged the report before an administrative law judge (ALJ). Following a hearing, the ALJ entered an order recommending that the Department enter a final order denying S.S.’s request to expunge or amend its report. The Department entered an order adopting the ALJ’s recommended order on June 2, 2000. S.S. now appeals that, final order entered by the Department.
Section 415.102(4), Florida Statutes (1999), defines caregiver as:
a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a disabled adult or an elderly person on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person’s guardian that a caregiver role exists.
(Emphasis added.) Additionally, the legislature expressed its intent that the Adult Protective Services Act should not interfere with the rights of individuals to make health care decisions for themselves. Section 415.101(2), Florida Statutes (1999), provides that, “the Legislature intends to place the fewest possible restrictions on personal liberty and the exercise of constitutional rights.” As such, the Act should be read narrowly.
The facts here do not reveal that S.S. had any kind of commitment to M.S. or that S.S. and M.S. had any kind of agreement that S.S. would act as M.S.’s caregiver. The ALJ made a specific finding in his recommended order that S.S.’s negligence was her failure to call for medical help.[1] However, he also found that there was no evidence that M.S. was disabled due to her advanced age, and that, in order for S.S. to call for help, she would have had to countermand her mother’s expressed desire to refuse help. M.S.’s explicit desire to reject help negates the existence of an agreement between the two that S.S. would act as M.S.’s caregiver in matters regarding medical assistance.
Similarly, the ALJ found that although the two lived together, M.S. was quite independent in her daily routine, “made decisions for herself, and tended to control joint decisions affecting [both women].” Testimony offered at the hearing showed that, prior to the fall, M.S. knowingly suffered from certain medical conditions and refused to seek medical help. Nothing in the record indicates that S.S. had assumed the responsibility of making medical decisions for her mother or that she had made any type of commitment to do so. Accordingly, the findings of fact made by the ALJ do not support his legal conclusion that S.S. was a caregiver as defined by the statute.
Reversed and remanded with directions to grant S.S.’s motion to amend or expunge the Department’s report.
BLUE, C.J., and FULMER, J., Concur.

. It is noteworthy that he made no other findings of neglect.